UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

          :

RUBEN RUBINOV,          :

          :

          Petitioner,          :

          :          21-cv-4397 (LJL)

          -v-          :

          :          OPINION AND ORDER

WARDEN W.S. PLILER,          :

          :

          Respondent.          :

          :

------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/29/2021

LEWIS J. LIMAN, United States District Judge:

Petitioner Ruben Rubinov ("Rubinov" or "Petitioner") brings a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the calculation of time to be credited to his sentence pursuant to the First Step Act of 2018, P.L. No. 115-391, 132 Stat. 5194 (2018).  Dkt. No. 1.

For the following reasons, the petition is denied and dismissed without prejudice.

## BACKGROUND

### I.    Earned Time Credits and the Risk and Needs Assessment System Under the First Step Act

The First Step Act of 2018 ("FSA"), enacted on December 21, 2018, directed the Attorney General to develop for federal inmates a risk and needs assessment system to (1) determine the recidivism risk of each prisoner and classify each as having minimum, low, medium, or high risk for recidivism; (2) assess the risk of violent or serious misconduct; (3) determine the type of evidence-based recidivism reduction ("EBRR") programming appropriate for each prisoner and assign each to such programming; (4) reassess the recidivism risk of each

prisoner periodically; and (5) reassign the prisoner to appropriate EBRR programs or productive

activities ("PAs") based on the revised determination.[1]  18 U.S.C. § 3632(a).

Under this system, a prisoner who successfully completes EBRR programming or PAs

earns time credits to be applied toward time in prerelease custody or supervised release.[2]  *Id.*

§ 3632(d)(4).  For every 30 days of successful participation in EBRR programming or PAs, a

prisoner earns 10 days of time credits.  *Id.* § 3632(d)(4)(A)(i).  And if a prisoner deemed to be at

minimum or low risk for recidivating has not increased this risk level over two consecutive

assessments, the prisoner earns an additional 5 days of time credits for every 30 days of

successful participation.  *Id.* § 3632(d)(4)(A)(ii).  A prisoner may not earn time credits for an

EBRR program successfully completed prior to when the FSA was enacted or during detention

prior to the date the prisoner's sentence commences.[3]  *Id.* § 3632(d)(4)(B).  The FSA also makes

prisoners convicted of certain offenses ineligible to receive such time credits.  *Id.*

§ 3632(d)(4)(D) (listing various offenses).

---

[1] An EBRR program is defined as a group or individual activity that reduces or is likely to reduce recidivism, is designed to help prisoners succeed upon release, and may include: social learning and communication, interpersonal, anti-bullying, rejection response, and other life skills; family relationship building, structured parent-child interaction, and parenting skills; classes on morals or ethics; academic classes; cognitive behavioral treatment; mentoring; substance abuse treatment; vocational training; faith-based classes or services; civic engagement and reintegrative community services; a prison job, including through a prison work program; victim impact classes or other restorative justice programs; and trauma counseling and trauma-informed support programs.  18 U.S.C. § 3635(3).
[2] Among other conditions, to be eligible for prerelease custody or supervised release, a prisoner must have earned time credits under the system "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" and have "shown through the periodic risk reassessments a demonstrated recidivism risk reduction" or "maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment."  18 U.S.C. § 3624(g)(1)(A)-(B).
[3] The limitation in 18 U.S.C. § 3632(d)(4)(B) does not reference PAs and only references EBRR programs.

The FSA mandated that this risk and needs assessment system be developed no later than 210 days after the FSA's enactment, i.e., by July 19, 2019. *Id.* § 3632(a).  On the day of that deadline, the Attorney General announced the system developed under the FSA—the Prisoner Reassessment Tool Targeting Estimate Risk and Needs ("PATTERN").  The next statutory deadline under the FSA then gave the Bureau of Prisons ("BOP") 180 days, or until January 20, 2020, to use the system to complete an initial assessment for each prisoner and begin to assign prisoners to EBRR programs; begin to expand EBRR programs and PAs it offers; and begin to implement other tools necessary to implement the system over time. *Id.* § 3621(h)(1).  On the day of this next deadline, the BOP announced that all inmates had received an initial assessment using PATTERN.  At this point, a two-year phase-in period began. *Id.* § 3621(h)(2)(A).  The FSA required the BOP to provide EBRR programs and PAs "for all prisoners before the date that is 2 years after the date on which" the BOP completed its initial assessments of all inmates. *Id.* During this two-year phase-in period, the FSA provided that "the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." *Id.* § 3621(h)(3). The deadline for this phase-in period is January 15, 2022.

Notwithstanding this implementation framework, the FSA also provided the BOP with additional discretion regarding the preliminary expansion of EBRR programs and PAs and the use of incentives and rewards. *See id.* § 3621(h)(4).  In particular, beginning when the FSA was enacted in 2018, the BOP "may begin to expand" any EBRR programs and PAs that exist at a prison and also "may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D," which includes the time credits discussed above. *Id.*

The BOP has proposed regulations regarding the procedures for earning, awarding,

losing, and restoring time credits authorized by the FSA.  *See* FSA Time Credits, 85 Fed. Reg.

75268 (Nov. 25, 2020).  The proposed regulations provide that eligible inmates must

successfully complete the EBRR program or PA that is assigned to them before they may earn

time credits and that anything less than successful completion will not result in time credits.  *Id.*

at 75269.  The proposed regulations also define a "day" of participation as one eight-hour-period

of a successfully completed EBRR program or PA.  *Id.*  When the comment period ended on

January 25, 2021, the BOP had received over 250 comments on the proposed regulations.  FSA

Time Credits, 86 Fed. Reg. 57612, 57613 (Oct. 18, 2021).  The comment period was reopened

for an additional thirty days to request further comment on the applicability of FSA time credits

to D.C. Code Offenders, and this additional comment period closed on November 17, 2021.  *Id.*

at 57612.  The BOP has not yet finalized these proposed regulations.

Having set forth the relevant provisions and history of the FSA, the Court turns next to

the facts of Petitioner's habeas petition.

## II.      Facts of Petitioner's Habeas Petition

On January 31, 2018, Petitioner was sentenced to a 71-month sentence in federal custody

and a three-year term of supervised release.  *See United States v. Rubinov*, 17-cr-356, Dkt. No.

27 (S.D.N.Y Feb. 1, 2018); Dkt. No. 3 ("Pet.") ¶ 4.  Petitioner's projected release date is May 3,

2023.  Dkt. No. 1-4, Ex. 8

Petitioner was first detained in 2017 at the Metropolitan Correctional Center where he

participated in a work program at the officer's dining hall and worked in other areas of the

kitchen and as a unit barber.  Dkt. No. 1-1 ("Pet. Aff.") ¶ 1.2.  In February 2018, after sentence

was imposed, Petitioner was transferred to the Metropolitan Detention Center where he

participated in a work program as a unit orderly and participated in PAs.  *Id.*  In July 2018,

Petitioner was transferred to the Federal Correctional Institution in Otisville, New York

("FCI-Otisville"), where he is currently incarcerated.  *Id.*; *see also* Pet. ¶ 2.  Since arriving at

FCI-Otisville, Petitioner has continuously participated in at least two work programs at a time,

volunteered for several additional work programs, and participated in extensive BOP

programming and educational activities.  Pet. Aff. ¶ 1.2.

On multiple occasions, including unit team meetings on July 23, 2019, July 10, 2020, and

December 30, 2020, FCI-Otisville Case Manager Samuel Best ("Best") assigned to Petitioner

EBRR programming and PAs, including a prison job (including through the prison work

program), religious classes and services, parenting classes, vocational training, adult continuing

education classes, anger management, recreation and leisure programs, and the non-residential

drug abuse treatment program.  *Id.* ¶ 2.2; *see also* Dkt. No. 1-3, Exs. 1, 3-4; Dkt. No. 1-4, Exs.

6-7.  On February 25, 2020, Petitioner was determined to be eligible to earn time credits under

18 U.S.C. § 3632(d), meaning that he was not convicted of a disqualifying offense.  Dkt. No. 9

("Best Decl.") ¶ 4.  At the December 2020 meeting, Best conducted Petitioner's initial

assessment via PATTERN and determined that Petitioner had a "low" risk of recidivism.  Pet.

Aff. ¶ 1.3.  A few months later, on April 28, 2021, Best completed a second assessment and

determined again that Petitioner had a "low" risk of recidivism.  *Id.* ¶ 4.2.[4]

Meanwhile, starting in January 2021, Petitioner used the BOP's administrative remedy

program to request that any time credits earned under the FSA and 18 U.S.C. § 3632(d)(4) be

calculated and applied to his release date.  Dkt. No. 1-4, Ex. 13.  On January 26, 2021, Petitioner

filed an Informal Resolution Form in which he detailed his participation in EBRR programs and

---

[4] Best declares that Petitioner's risk assessment was conducted on June 24, 2021 and determined
that Petitioner had a low risk for recidivism.  Best Decl. ¶ 5.

PAs, calculated that he earned 450 days of time credits under the FSA's formulas, and requested

that these time credits be applied to his release date. *Id.* Two days later, Petitioner received a

response stating: "This cannot be handled at this institution." *Id.* Petitioner then filed a Request

for Administrative Remedy, and, on February 10, 2021, the warden responded: "The application

and computation of Federal Time Credit for completion of Evidence based Recidivism

Reduction Programs and Production Activities under the First Step Act is not completed at the

institutional level. Federal Time Credit is calculated by the Designation and Sentence

Computation Center." *Id.* Petitioner then appealed by filing a Regional Administrative Remedy

Appeal and, after not receiving a response for more than 30 days on his appeal, a Central Office

Administrative Remedy Appeal. *Id.* On April 16, 2021, the Regional Director responded to

Petitioner's appeal:

> The BOP is finalizing the method by which [federal time credits] is calculated.
> Once this method is determined, staff will conduct a review of your assigned and
> completed EBRR programs and PA to calculate the amount of [federal time credits]
> you may receive. Your projected release date is May 3, 2023, and there is sufficient
> time to apply [federal time credits] to your pre-release placement.

*Id.* Petitioner then appealed this decision to the Central Office.[5] *Id.*

### PROCEDURAL HISTORY

On May 17, 2021, Petitioner filed the instant habeas petition under 28 U.S.C. § 2241

against Respondent Warden W.S. Pliler ("Respondent"), warden of FCI-Otisville where

Petitioner is currently incarcerated. Dkt. No. 1.[6] Petitioner calculates that he qualifies for 540

days of time credits under the FSA and argues that, if these credits were applied, he should have

been released to either prerelease custody or supervised release on May 3, 2021.[7] Pet. ¶ 13; Pet.

---

[5] No response had been received on this appeal to the Central Office when this petition was filed.
Dkt. No. 1-2 at 4.
[6] Due to a filing error, part of the petition was refiled a few days later. *See* Dkt. No. 3.
[7] Petitioner's calculation of 540 days admittedly includes time since his incarceration prior to the

Aff. ¶¶ 4.4, 5.2; Dkt. No. 1-2 at 1, 9.  Respondent filed a memorandum of law in opposition to

the petition, Dkt. No. 8, and Petitioner filed a reply memorandum of law, Dkt. No. 10.

## LEGAL STANDARD

"A writ of habeas corpus under [28 U.S.C.] § 2241 is available to a federal prisoner who

does not challenge the legality of his sentence, but challenges instead its execution subsequent to

his conviction."[8]  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

Execution of a sentence includes computation of a prisoner's sentence by prison officials and

types of detention.  *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006).

"When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the

burden of proving that he is being held contrary to law; and because the habeas proceeding is

civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the

evidence.'"  *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting

*Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

## DISCUSSION

Respondent's sole argument in opposition to the petition is that it is premature and not

ripe for review because Petitioner "has not shown an imminent—or any—injury" as the FSA

---

passage of the FSA.  Dkt. No. 1-2 at 11.  Petitioner calculates 1,095 days of EBRR programming
and PA days between June 12, 2017 and May 3, 2021, which converts to approximately 36
30-day periods for which he asserts he earns 15 days of time credits, i.e., 36 x 15 = 540.  Pet.
Aff. ¶ 4.4; Dkt. No. 1-2 at 11-12.  Since Petitioner's scheduled release date is May 3, 2023, the
application of 540 days, or 18 months, of time credits would move this date up to November
2021.  Dkt. No. 1-2 at 12.  Then, according to Petitioner, prisoners with only six months left
qualify for prerelease custody under 18 U.S.C. § 3624(c)(2), moving his release date to the
beginning of May 2021.  *Id.*  While the petition and Petitioner's affidavit state that the release
date should have been May 3, 2021, the memorandum in support of the petition argues that the
release date should have been May 1, 2021.  *Id.* at 1.  This discrepancy does not factor into the
Court's legal analysis.
[8] By contrast, 28 U.S.C. § 2255 is the vehicle for a prisoner who challenges the legality of his
sentence.  *See id.*

does not require the BOP to calculate or apply earned time credits for any inmate until January

15, 2022, the deadline for the two-year phase-in period.[9]   Dkt. No. 7 at 1.

"Ripeness 'is peculiarly a question of timing.'"   *Nat'l Org. for Marriage, Inc. v. Walsh*,

714 F.3d 682, 687 (2d Cir. 2013) (quoting *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S.

568, 580 (1985)).   "To be justiciable, a cause of action must be ripe—it must present 'a real,

substantial controversy, not a mere hypothetical question.'"   *Id.* (quoting *AMSAT Cable Ltd. v.*

*Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993)).   "A claim is not ripe if it depends upon

'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"   *Id.*

(quoting *Union Carbide*, 473 U.S. at 580-81).   "Ripeness is a justiciability doctrine designed 'to

prevent the courts, through avoidance of premature adjudication, from entangling themselves in

abstract disagreements over administrative policies, and also to protect the agencies from judicial

interference until an administrative decision has been formalized and its effects felt in a concrete

way by the challenging parties."   *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803,

807-08 (2003) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

"For a case to be deemed justiciable under Article III, it must be ripe."   *Marchi v. Bd. of*

*Coop. Educ. Servs. of Albany*, 173 F.3d 469, 478 (2d Cir. 1999).   "Indeed, ripeness is a

'constitutional prerequisite to exercise of jurisdiction by federal courts.'"   *Id.* (quoting *Fed.*

*Election Comm'n v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 51 (2d Cir.

1980)).   "Often, the best way to think of constitutional ripeness is as a specific application of the

actual injury aspect of Article III standing."   *Nat'l Org. for Marriage*, 714 F.3d at 688.   "The

'irreducible constitutional minimum of standing contains three elements': (1) 'the plaintiff must

---

[9] Respondent does not argue that Petitioner failed to exhaust the administrative remedies
available in the BOP system.   *See* Dkt. No. 7.

have suffered an injury in fact,' i.e., 'an invasion of a legally protected interest which is (a)

concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2)

'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it

must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision.'" *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

"Constitutional ripeness, in other words, is really just about the first *Lujan* factor—to say a

plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not

'actual or imminent,' but instead 'conjectural or hypothetical.'" *Id.* (quoting *Lujan*, 504 U.S. at

560).

Here, Petitioner argues that, if the 540 days of time credits that he claims he has earned

under the FSA are applied to his sentence, he should have already been released from

imprisonment to either prerelease custody or supervised release.  In short, he claims that he is

being incarcerated in federal prison beyond the date by which he should have been released to

those lesser forms of custody.  As a matter of Article III justiciability, it is difficult to see how

this claimed injury is, as Respondent would have it, not any injury at all or not imminent.  If

Petitioner is correct on the merits of his claim and the BOP should have applied the FSA time

credits he claims he has earned, Petitioner is currently being imprisoned when in fact he should

not be.  Perhaps if a petitioner were seeking to having time credits applied so that his projected

release date would be moved up to another temporally distant date, that would be another matter.

But that is not Petitioner's claim.  Petitioner's habeas petition thus presents "a real, substantial

controversy, not a mere hypothetical question," *Nat'l Org. for Marriage*, 714 F.3d at 687, and is

ripe for review.[10]

_____

[10] "The ripeness doctrine is drawn both from Article III limitations on judicial power and from

Respondent relies on cases in which courts have concluded that petitions seeking similar relief as the petition here were denied as unripe or premature.  Dkt. No. 7 at 10-13.  Most of Respondent's cases, however, appear to conflate the analysis of constitutional ripeness with the merits of the petitioners' claims in those cases.  Yet "[o]ur threshold inquiry into standing" and the related inquiry into ripeness "'in no way depends on the merits of the [petitioner's] contention that particular conduct is illegal.'"  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990) (second alteration in original) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *cf. ASARCO Inc. v. Kadish*, 490 U.S. 605, 624 (1989) ("[A]lthough federal standing 'often turns on the nature and source of the claim asserted,' it 'in no way depends on the merits of the [claim].'" (alteration in original) (quoting *Warth*, 422 U.S. at 500)); *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011) (describing an argument that "confuses weakness on the merits with absence of Article III standing").

---

prudential reasons for refusing to exercise jurisdiction."  *Nat'l Org. for Marriage*, 714 F.3d at 687 (quoting *Nat'l Park Hospitality*, 538 U.S. at 808).  "To determine whether to abstain from a case on prudential ripeness grounds, 'we proceed with a two-step inquiry, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'"  *Id.* at 691 (quoting *New York C.L. Union v. Grandeau*, 528 F.3d 122, 131-32 (2d Cir. 2008)).  The Court interprets Respondent's argument as one of Article III ripeness.  However, even if Respondent were challenging the prudential ripeness of the petition, the claim would be prudentially ripe.  Petitioner's claim primarily turns on the interpretation of the FSA and the discretion granted to the BOP in offering time credits to prisoners before the January 15, 2022 deadline by which the BOP is required to calculate and apply such time credits.  These are legal issues that are within the domain of judicial decisionmaking.  It is true that the parties dispute the amount of time credits earned by Petitioner and that such issues could benefit from further development.  (Respondent contends that "Petitioner has vastly overstated the amount of [earned time credits] to which he is entitled," Dkt. No. 7 at 2 n.2, but provides no further rebuttal to Petitioner's calculation.  There is no indication in the record that the BOP has considered or is in the process of considering Petitioner's calculation.)  But the hardship to Petitioner in withholding review—namely, his allegedly prolonged imprisonment—suggests that, as a prudential matter, Petitioner's claim is ripe for review.

Though the Court concludes that Mr. Rubinov's petition is constitutionally ripe, the

petition fails on the merits.  The FSA requires the BOP to provide EBRR programs and PAs for

all prisoners by January 15, 2022.  *See* 18 U.S.C. § 3621(h)(2)(A).  But during the preliminary

phase when programming is expanded, the BOP "*may* offer to prisoners who successfully

participate in" EBRR programs and PAs "the incentives and rewards described in subchapter D,"

which includes time credits.  *Id.* § 3621(h)(4) (emphasis added).  That the BOP "may" offer

incentives such as time credits to prisoners during this preliminary phase indicates that the BOP

has discretion to determine whether to do so.  *See Kingdomware Techs., Inc. v. United States*,

579 U.S. 162, 172 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall'

usually connotes a requirement."); *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The

word 'may,' when used in a statute, usually implies some degree of discretion."); *Anderson v.

Yungkau*, 329 U.S. 482, 485 (1947) ("And when the same Rule uses both 'may' and 'shall,' the

normal inference is that each is used in its usual sense—the one act being permissive, the other

mandatory.").  Thus, the FSA delegated exclusively to the BOP the discretion, before January

15, 2022, whether to offer time credits to prisoners who successfully complete such

programming; Petitioner does not have a judicially enforceable right to such relief at this time.

*See Knight v. Bell*, 2021 WL 1753791, at *3 (D. Md. May 4, 2021) ("The BOP's obligation to

implement the evidence-based recidivism reduction program and award earned time credits does

not require actual implementation for each inmate until January 2022.  Therefore, BOP inmates

cannot obtain habeas relief on this ground at this time." (internal quotation marks and citations

omitted)).

Though generally discussed in the context of ripeness, the cases cited by Respondent

interpret the FSA in the same way.  *See, e.g.*, *Kennedy-Robey v. FCI Pekin*, 2021 WL 797516, at

*3 (C.D. Ill. Mar. 2, 2021) ("The use of the word 'may' [in 18 U.S.C. § 3621(h)(4)] indicates

that, while it is permissible for the BOP to award time credits under the statute at any time after

the date of enactment, the BOP is not *required* to do so. . . . The Court agrees; the statute makes

implementation permissive during the System's phase-in period, not mandatory."); *Cohen v.*

*United States*, 2021 WL 1549917, at *2-3 (S.D.N.Y. Apr. 20, 2021) ("[T]he statute does not

require the BOP to begin awarding [earned time credits] during the phase-in period. . . .

Accordingly, there is no basis for the Court to conclude that the failure of the BOP to provide

[earned time credits] during the phase-in period is a violation of the First Step Act."); *DiStefano*

*v. Pliler*, 2021 WL 3524130, at *2 (S.D.N.Y. July 5, 2021) ("[T]he BOP is not required to award

incentives until the end of the phase-in period.  Until then, the Court lacks any basis to conclude

that the BOP's failure to provide time credits is a violation of the Act or [petitioner] has any right

to time credits earned that the Court can enforce."); *Jones v. Hendrix*, 2021 WL 2402196, at *3-4

(E.D. Ark. June 11, 2021) (same); *Holt v. Warden*, 2021 WL 1925503, at *5-6 (D.S.D. May 13,

2021) (same); *Fleming v. Joseph*, 2021 WL 1669361, at *4 (N.D. Fla. Apr. 7, 2021)

(same), *report and recommendation adopted,* 2021 WL 1664372 (N.D. Fla. Apr. 28, 2021);

*Llewlyn v. Johns*, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021) (same), *report and*

*recommendation adopted,*  2021 WL 307289 (S.D. Ga. Jan. 29, 2021); *James v. Johns*, 2020 WL

5047158, at *2 (S.D. Ga. Aug. 4, 2020) (same), *report and recommendation adopted,* 2020 WL

5046303 (S.D. Ga. Aug. 26, 2020); *Hand v. Barr*, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4,

2021) (same), *report and recommendation adopted,* 2021 WL 1853295 (E.D. Cal. May 10,

2021); *Llufrio v. Johns*, 2020 WL 5248556, at *2 (S.D. Ga. Aug. 13, 2020) (same), *report and*

*recommendation adopted,* 2020 WL 5245133 (S.D. Ga. Sept. 2, 2020).

Petitioner instead argues that the Court should look to *Goodman v. Ortiz*, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020), which interpreted the FSA to "require a 2-year phase-in, not only of participation in the programs, but of incentives for participation in the programs." Based on "[t]he ordinary meaning of 'phase-in' combined with the analysis of the statutory framework of § 3621(h)," the court in *Goodman* held that the "BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner." *Id.* But, as discussed, while the statute requires the BOP to take certain actions during the phase-in process, those actions do not include the application of time credits during this preliminary period. The statutory phase-in process addresses "programs and activities"; "incentives and rewards" are addressed by a different provision of the statute. Admittedly, the effect of this interpretation may be to deprive some prisoners with proximate release dates who have participated in EBRR programs and PAs the opportunities to use the time credits they earned during the phase-in period to reduce their time in incarceration. Petitioner may be one of those prisoners if his time calculations are correct. But that result is a function of the statute and of the discretion that Congress gave the BOP when it drafted the statute: During the limited phase-in period, prisoners are given priority for EBRR programs and PAs based on the proximity of their release dates while the BOP retains the discretion to decide whether to offer time credits earned. *See* 18 U.S.C. § 3621(h)(3), (4). It is not a subject within the province of the courts to address. The majority of courts to consider the issue have made precisely this point and similarly not adopted *Goodman*'s interpretation of the FSA. *See, e.g.*, *Cohen*, 2021 WL 1549917, at *3 ("While it is true that the statute requires a phase-in, [*Goodman*] misses the point that the statute requires various activities during the phase-in period, but pointedly does not require the BOP to being [sic] to assign [earned time

13

credits] during the phase-in period.  The statute contemplates a two-year period for the development of programs and the validation of risk assessment tools but does not require the BOP to truncate that process and begin to award [earned time credits] during that period."); *Kennedy-Robey*, 2021 WL 797516, at *4 ("If immediate implementation were mandated, Congress would have used the word 'shall' and not 'may' in 18 U.S.C. § 3641(h)(4).").

Because the Court cannot require the BOP to exercise its discretion to calculate and apply Mr. Rubinov's time credits before January 15, 2022, Mr. Rubinov's petition must be denied and dismissed without prejudice at this time.

### CONCLUSION

For the foregoing reasons, the petition is DENIED and DISMISSED without prejudice. The Clerk of Court is respectfully directed to close the case.


SO ORDERED.

Dated: November 29, 2021
      New York, New York

                                        LEWIS J. LIMAN
                                  United States District Judge